**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Thomas Cabral and Cheryl Pantano, *on behalf of themselves and all others similarly situated*, | |
| Plaintiff, | Civil Action No.: 19-cv-12245-ADB |
| v. | |
| PHH Mortgage Corporation and Ocwen Loan Servicing, LLC, | |
| Defendant. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (1) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND (2) INCENTIVE AWARDS TO THE NAMED PLAINTIFFS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. CLASS COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES FOR THEIR SERVICE TO THE CLASS UNDER THE PERCENTAGE-OF-RECOVERY METHOD ........ 3

II. ONE-THIRD OF THE SETTLEMENT FUND IN FEES AND EXPENSES IS REASONABLE ON ITS FACE ........ 4

III. THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE AWARD ........ 5

A. THE SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED ........ 6

B. THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED ........ 7

C. THE COMPLEXITY AND DURATION OF THE LITIGATION ........ 8

D. THE RISKS OF THE LITIGATION ........ 8

E. THE AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFF'S COUNSEL ........ 9

F. AWARDS IN SIMILAR CASES ........ 10

G. PUBLIC POLICY CONSIDERATIONS ........ 11

H. A LODESTAR CROSS-CHECK SUPPORTS THE REQUESTED AWARD ........ 12

IV. THE REASONABLENESS OF THE REQUESTED AWARD IS FURTHER DEMONSTRATED BY THE FACT THAT IT IS INCLUSIVE OF EXPENSES ........ 13

V. THE COURT SHOULD APPROVE INCENTIVE AWARDS TO THE NAMED PLAINTIFFS FOR THEIR EFFORTS ON BEHALF OF THE CLASS ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596 (D. Me. Nov. 21, 2013) .......................5

*Armata v. Target Corp.*, 480 Mass. 14, 99 N.E.3d 788 (2018) .........................................................12

*Aspinall v. Philip Morris Companies, Inc.*, 2013 WL 7863290 (Mass. Super. Feb. 7, 2013) .............6

*Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447 (D. Me. May 4, 2011) ...............................5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...................................................................3

*Boyd v. Bank of Am. Corp.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .......................................9

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741 (N.D. Ill. July 23, 2015)........10

*Brown v. Rita's Water Ice Franchise Co. LLC*, 2017 WL 1021025 (E.D. Pa. Mar. 16, 2017) ...........7

*Carlson v. Target Enter., Inc.*, 2020 WL 1332839 (D. Mass. Mar. 23, 2020)..............................7, 14

*Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53 (2002) .........................................................12

*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013) ...........................................................................................................11

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) ......................................................5

*Davis v. Mutual Life Ins. Co.*, 6 F.3d 367 (6th Cir. 1993) .................................................................9

*Duchene v. Westlake Servs., LLC*, 2016 WL 6916734 (W.D. Pa. July 14, 2016) ..............................7

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000)..........................................................4

*Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044 (D. Mass. Nov. 3, 2016)........4, 14

*Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015).......................................................................................................11

*In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 WL 1427404 (D. Mass. Apr. 9, 2010) ..................4

*In re AMICAS, Inc. S'holder Litig.*, 2010 WL 5557444 (Mass. Super. Dec. 6, 2010).......................13

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ....................................................5

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833 (D. Mass. Aug. 17, 2005)........4, 14

*In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167 (D. Mass. 2014) .......................4

*In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448 (D.P.R. 2011) .....................11, 14

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)...........................................3, 5, 11, 12

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003).....................................................5

*In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009).................5

*In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) .................................4

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995).......................................................................................................3

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D. Mass. 2015) ............12

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880 (3d Cir. 2016)....................10
*Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208 (E.D. Mo. June 10, 2015).........................15
*McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883 (D. Me. June 20, 2011) ..........................4
*Medoff v. CVS Caremark Corp.*, 2016 WL 632238 (D.R.I. Feb. 17, 2016) .......................................5
*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ..................................................................3
*Murphy v. Charlestown Sav. Bank*, 380 Mass. 738, 405 N.E.2d 954 (1980)....................................12
*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)..........................................................................................13
*O'Neill v. Carrington Mortgage Services, LLC*; No: 1:19-cv-10643-ADB, No. 52 (D. Mass., Aug. 7, 2020)..........................................................................................4, 10
*Oberther v. Midland Credit Management*, Doc. No. 90, 14-cv-30014 (D. Mass. July 13, 2016) .......7
*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)..................9
*Roberts v. TJX Companies, Inc.*, 2016 WL 8677312 (D. Mass. Sept. 30, 2016).......................3, 4, 13
*Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011)....................11
*Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012)..........................................7
*Vandervort v Balboa Capital Corp*., 8 F. Supp. 3d 1200 (C.D. Cal. 2014)................................10, 11
*Watkins v. Glenn Assocs., Inc.*, 2016 WL 3224784 (Mass. Super. June 10, 2016)...........................12
*Zimmerman v. Portfolio Recovery Assoc., LLC*, 276 F.R.D. 174 (S.D.N.Y. 2011)............................7

**Statutes**

M.G.L. c. 93A § 9(2)..................................................................................................11
M.G.L. c. 93A § 9(4)..................................................................................................3
Mass. Gen. Laws ch. 93A ..........................................................................................1
Mass. Gen. Laws ch. 93A, § 9(3)................................................................................6

**Other Authorities**

Fed. R. Civ. P. 23(h)...............................................................................................1, 3
Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237 (1985)...........................4

**Treatises**

*Manual for Complex Litigation* (4th ed. 2004) ....................................................................14

**Regulations**

940 Code Mass. Regs. § 7.04(1)(f) ..........................................................................1

Settlement Class Representatives Thomas Cabral ("Cabral"), Cheryl Pantano ("Pantano" and together with Cabral, "Plaintiffs" or "Class Representatives"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Incentive Awards to the Named Plaintiffs.

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs and Class Counsel respectfully move this Court for an Order of attorneys' fees and expenses of $192,000 (one-third of the $576,000 Settlement Fund[1]) and for incentive awards to the Plaintiffs in the amount of $6,000 each. Plaintiffs and Class Counsel have efficiently and successfully litigated this case which sought relief under Mass. Gen. Laws ch. 93A for violations of 940 Code Mass. Regs. § 7.04(1)(f) (2012) (the "Regulation") which prohibits creditors from "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period."

On August 12, 2021, the Court preliminarily approved the class action settlement agreement between Plaintiffs and Defendants PHH Mortgage Corporation ("PHH"), individually and as successor by merger to Ocwen Loan Servicing, LLC ("Ocwen") (PHH and Ocwen are hereinafter referred to collectively as "PHH Defendants"). (Doc. No. 45). In accordance with the Preliminary Approval Order, on September 10, 2021, Notice detailing the terms of the settlement was mailed to the Settlement Class and the Settlement Website, www.cabralsettlement.com, was established. (Declaration of Stephen Taylor ("Taylor Decl."), ¶ 8).

[1] Capitalized terms used herein have the same meaning that they have in the Class Action Settlement Agreement.

The settlement here provides easy and direct means for Settlement Class Members to benefit from the Settlement Fund. All 10,125 Settlement Class Members who do not opt out[2] will be sent an initial settlement check for approximately $31.56.[3] If there are funds remaining from uncashed initial checks, a second settlement check consisting of a *pro rata* share of the remaining funds will be sent to those members who did cash their first check.[4] The benefits here are excellent and very broad-based.

But for Class Counsel and the Class Representatives, these 10,125 persons would receive nothing and likely not even be aware of their legal rights. Instead, Settlement Class Members can participate in this excellent result or opt-out if they so choose. Under the circumstances of this case, an award of one-third of the fund is abundantly reasonable because:

- This is an excellent settlement aiming to provide benefits to the entire class;
- The settlement was agreed only extensive motion practice, discovery regarding key issues, and an arm's length mediation before a neutral; and
- A one-third contingent fee is consistent with Massachusetts cases as well as common-fund cases throughout the nation.

For the reasons stated herein, Class Counsel and Plaintiffs respectfully request that the Court approve the incentive and attorneys' fees and expenses awards.

---

[2] The Settlement Administrator reports no opt-outs as of September 28, 2021. (Taylor Decl. ¶ 8). The opt-out deadline is November 10, 2021. (Doc. 45 ¶ 23).

[3] Assuming the Court approves a 1/3 Fee Award and $12,000 in aggregate Incentive Awards, dispersal will be as follows:

Net Fund = $319,630 ($576,000 (Gross Fund) - $192,000.00 (Fee Award) – $52,370 (administrative costs) - $12,000 (Incentive Awards))

Initial Settlement Check = $31.56 (Net Fund / 10,125 (Settlement Class)

[4] If amounts remain in the fund after that second round of checks, those amounts will return to the PHH Defendants.

# ARGUMENT

## I. CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES FOR THEIR SERVICE TO THE CLASS UNDER THE PERCENTAGE-OF-RECOVERY METHOD

Where a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). Fed. R. Civ. P. 23 further states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Likewise, Chapter 93A provides for attorneys' fees and costs. *See* M.G.L. c. 93A § 9(4).

The "common-fund" doctrine allows counsel to draw a reasonable fee as a percentage of the fund created by a settlement for the benefit of the class. *Boeing Co. v. VanGemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). As held by the First Circuit, the "percentage of fund" approach offers distinctive advantages including: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial resources; and (5) it better approximates the workings of the marketplace. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

For these reasons, the First Circuit has stated that the "use of the [percentage of fund] method in common fund cases is the prevailing praxis." *Id.*; *see also Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (approving 1/3 of the fund with lodestar cross-check); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85–89 (D. Mass. 2005) (approving 33 1/3% fee as a percentage of the fund); *In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 WL 1427404, at *1 (D.

Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method.").

In weighing an appropriate attorney fee award under a common fund request, the First Circuit has not set forth a fixed set of factors, however, courts generally consider the *Goldberger* factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (*citing In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), *citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir.2000); Third Circuit Task Force, Court Awarded Attorney's Fees, 108 F.R.D. 237, 255–56 (1985)).

The Settlement Agreement here creates a common fund of $576,000. Class Counsel requests an award of attorneys' fees and costs in the amount of one-third of the fund ($192,000) for their efforts on behalf of the class. This amount is reasonable, fair, and fully justified.

## II. ONE-THIRD OF THE SETTLEMENT FUND IN FEES AND EXPENSES IS REASONABLE ON ITS FACE

As an initial matter, one-third of the settlement fund is reasonable on its face and awarded in the First Circuit. *See O'Neill v. Carrington Mortgage Services, LLC*; No: 1:19-cv-10643-ADB, No. 52 (D. Mass., Aug. 7, 2020) (approving one-third fee and expense request); *Roberts*, 2016 WL 8677312 at *9; *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, at *1 (D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber*

*Techs., LLC*, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (same); *see also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) (awarding 30% of common fund and observing that "as several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations.").

"In most instances, [the determination] will involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) ("There are also several cases that suggest that the standard percentage is generally lower as the common fund increases."); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998). It is the "mega funds," those in excess of $50 million, which tend to be at the low end of this sliding scale. *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 188 (D. Mass. 1998) ("District courts have awarded fees of 4 to 16 percent as the so-called megafund baseline."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 513 (W.D. Pa. 2003) (citing cases) (awarding 25% of $25 million common fund).

At $576,000, the size of the fund here is not so large as to justify less than one-third. *See In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (approving 30% in fees of common fund of $10.25 million and stating "the settlement fund is not so large as to support a percentage smaller than thirty percent") (emphasis supplied). Thus, the fee and expense request here is reasonable on its face.

## III. THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE AWARD

Consideration of the *Goldberger* factors weigh strongly in favor of approving the requested fees and expenses.

### A. THE SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED

The size of the fund here and the number of persons benefited support the requested fee.

The fund of $576,000 resolves 10,125 potential claims for violations of the Regulation and Chapter 93A owing to the PHH Defendants' alleged practice of calling consumers more than two times in a seven-day period. Absent a showing of actual provable damages owing to excess phone calls, class members would be entitled to $25 dollars for their claims with recovery for up to $50 to $75 dollars if Plaintiffs established the violations were "willful or knowing." Mass. Gen. Laws ch. 93A, § 9(3). Whether someone may recover $25 for each violation of the collection Regulation is a question which has not been decided by Massachusetts courts. In other contexts, statutory damages for claims under Chapter 93A are per claim rather than each unfair or deceptive occurrence. *See Aspinall v. Philip Morris Companies, Inc.*, 2013 WL 7863290, at *9 (Mass. Super. Feb. 7, 2013) (the $25 in damages is per claim and not per sale of each misleading cigarette packaging). The $576,000 fund here represents, in total, approximately $56 per each class member, more than the statutory recovery under Chapter 93A. This is an excellent result.[5]

In addition, the settlement benefits the entire Class where members who do not opt-out will receive money directly. When based on the net fund (gross fund excluding fees, costs etc.) the initial settlement checks will equal approximately $31 per class member, an amount still above the statutory award if each and every Settlement Class Member cashes their Initial Settlement Check. If members choose not to cash the initial check, those remaining funds will be redistributed to those who did.

---

[5] Indeed, cases under the Telephone Consumer Protection Act, which provide for at least $500 dollars for each and every unlawful communication, settle for far less per class member or even claiming class member than what has been achieved here. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (total recovery is $1 per member and $52 per claiming member (collecting cases on claimant recovery)).

Thus, if 50% of Settlement Class Members cash their initial check, each of those will receive $62 in total. If 25% of Settlement Class Members cash their initial check, each of those will receive $124 in total.

This is an outstanding recovery for violations of chapter 93A and the Debt Collection Regulation which provides very substantial recovery for all Settlement Class Members.

**B. THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED**

The skill and efficiency of the attorneys involved also weighs in favor of the requested fees and expenses. Class Counsel are experienced and skilled consumer protection and class action litigators. (Declaration of Sergei Lemberg ("Lemberg Decl.") ¶¶ 4-8). They have successfully represented classes in both contested and settled proceedings. *See, e.g., Carlson v. Target Enter., Inc.*, 2020 WL 1332839 (D. Mass. Mar. 23, 2020) (final approval of class action settlement for alleged violations of Chapter 93A and 940 C.M.R. § 7.04(1)(f)); *Oberther v. Midland Credit Management*, Doc. No. 90, 14-cv-30014 (D. Mass. July 13, 2016) (Fair Debt Collection Practice Act ("FDCPA") class action settlement); *Johnson v. Comodo Grp., Inc.*, 2020 WL 525898, at *1 (D.N.J. Jan. 31, 2020) (contested class certification decision in TCPA action); *Brown v. Rita's Water Ice Franchise Co. LLC*, 2017 WL 1021025, at *1 (E.D. Pa. Mar. 16, 2017) (final approval of class settlement of $3MM common fund in TCPA action); *Duchene v. Westlake Servs., LLC*, 2016 WL 6916734 (W.D. Pa. July 14, 2016) (final approval of class settlement in TCPA action); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying auto fraud class action); *Zimmerman v. Portfolio Recovery Assoc., LLC*, 276 F.R.D. 174 (S.D.N.Y. 2011) (certifying FDCPA class action).

Class Counsel brought their experience and skill to bear to litigate and settle this case and oversee the administration of the settlement process.

### C. THE COMPLEXITY AND DURATION OF THE LITIGATION

The complexity and duration of the litigation also weighs in favor of the requested fees and expenses.

The claims in this action involved complicated issues concerning Defendant's business practices and business records. The claims also involved complicated issues of law, including how damages can be calculated and whether Defendant's violations of the Massachusetts Debt Collection Regulations fell within certain exceptions to liability and whether Defendant's violations could be shown on a class-wide basis. Further, the course of the two separate litigations is and would be complex. The claims of the Plaintiffs were initially brought in two separate proceedings. Cabral initiated *Cabral v. PHH Mortgage Corp.*, No. 1973CV00379 (Mass. Super.) (the "Cabral Action"), and Pantano initiated *Pantano v. Ocwen Loan Servicing, LLC*, No. 1977CV00530 (Mass. Super.) (the "Pantano Action"). Those actions were removed to federal court, remanded on Plaintiffs' motions, and the Cabral Action was removed a second time to this Court. Absent settlement and the consolidation of the Cabral and Pantano actions in this proceeding, the two litigations would proceed separately.[6] The complexity of these issues amply supports the requested award, particularly considering the skillful and efficient manner in which Class Counsel handled those issues and brought the case to a successful resolution on behalf of the Settlement Class.

### D. THE RISKS OF THE LITIGATION

The risks of litigation support the requested award. For any firm to bring a class action against a substantial entity like the PHH Defendants requires commitment of time and resources in the face of significant risks of loss and/or delay. In this case, Class Counsel is comprised of one small firm.

[6] It is conceivable that one, or all, of the Parties would have sought to consolidate the matters or stay one proceeding pending the other. However, that was not a step any Party took nor is it clear if an attempt at consolidation or to stay would be successful in the face of opposition.

Firms of small size face even greater risks in litigating large class actions with no guarantee of payment. *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (finding heightened risk of small firm representation should be rewarded with larger percentage fee for good result); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 750 (1987) (Delaware Valley II) (plurality opinion) ("[C]ontingent litigation may pose greater risks to a small firm or a solo practitioner because the risk of nonpayment may not be offset so easily by the presence of paying work. . . ."); *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 382 (6th Cir. 1993) ("[T]he maintenance of comparatively large pieces of litigation prevents small firms from diversifying risk by taking on additional clients.").

This is a pure contingent fee case, which Class Counsel took on with risk concerning not only the result of the case, but also how much time and money would need to be invested to get a result against Defendants who are well able to devote the resources to litigate these types of cases. Had the case been lost, they would have received no compensation whatsoever for their significant investment of time and effort. Accordingly, this factor also weighs in favor of the requested award.

### E. THE AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFF'S COUNSEL

Class Counsel have invested significant time and effort in this action. Class Counsel (1) investigated Plaintiffs claims against PHH and Ocwen and each entities' business practices; (2) drafted and served on each Defendant a demand letter pursuant to M.G.L. Chapter 93A, Section 9, for relief on behalf of each Plaintiff and a class of similarly situated persons; (3) drafted and filed Plaintiffs' class action complaints in Bristol and Essex Superior Court; (4) filed, in the separate Cabral and Pantano proceedings, motions to remand and opposed motions to dismiss; (5) engaged in formal and informal discovery throughout the litigation, including multiple conferrals with defense counsel; (6) participated in a full day mediation and submitted detailed mediation briefs to the mediator; (7)

negotiated and drafted a comprehensive Settlement Agreement; (8) drafted the Stipulation of Dismissal and Tolling Agreement in the Pantano action and the First Amended Complaint in this action which consolidated Plaintiffs' claims; (9) prepared a motion for preliminary approval of the Settlement; (10) regularly communicated with the Settlement Administrator to ensure a smooth notice and claims process following the Court's preliminary approval order; (11) reviewed the language and content of the settlement website; (12) and communicated with the named Plaintiffs throughout the case. (Declaration of Sergei Lemberg ¶ 11).

In addition, Class Counsel will devote further time and effort appearing at the final approval hearing, responding to inquiries from Class Members going forward, addressing any objections that could arise and monitoring the distribution of settlement payments by the Settlement Administrator until the fund is expended and closed. (Lemberg Decl. ¶ 12).

These combined efforts, taken with the risk of no recovery to counsel whatsoever, support the requested award in this case, and demonstrate that the fees and expenses requested here have been well earned.

### F. AWARDS IN SIMILAR CASES

Awards in similar cases support the requested fee. Indeed, the fee requested in this case is in accord with awards in other class action cases involving similar consumer protections statutes, including the Telephone Consumer Protection Act, which like the Massachusetts Debt Collection Regulations, seeks to protect consumers from harassing phone calls. *See, e.g., O'Neill,* No: 1:19-cv-10643-ADB, No. 52 (D. Mass., Aug. 7, 2020) (approving one-third fee of $237,500 fund); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880 (3d Cir. 2016) (affirming award of one-third of a reversionary settlement fund in TCPA class action); *Vandervort v Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (fee of one-third awarded in TCPA case); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third

of common fund in TCPA class action); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85–89 (D. Mass. 2005) (approving 33 1/3% fee as a percentage of the fund); *Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236, at *1 & n.3 (Mass. Super. Aug. 5, 2013) (awarding 30% of the fund in fees in Chapter 93A class action).

The fee and expense request here is in-line with awards in similar cases. Thus, this factor weighs in support of the requested award.

**G. PUBLIC POLICY CONSIDERATIONS**

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent" *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Here, given the risk and expense in pursuing class members' Chapter 93A claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *Id.*

Moreover, the Massachusetts legislature encourages litigants to pursue Chapter 93A claims like these via class actions. *See* M.G.L. c. 93A § 9(2) ("Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated person"). Chapter 93A is a broad consumer protection statute

which "encompasses claims where a plaintiff's damages are de minimis" *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 60 n.14 (2002); *see also Murphy v. Charlestown Sav. Bank*, 380 Mass. 738, 743, 405 N.E.2d 954, 957 (1980) ("G.L. c. 93A deserves broad construction."). And the regulation at issue here – the Massachusetts Debt Collection Regulations – was enacted to "prevent[ ] creditors from harassing, oppressing, or abusing debtors." *Armata v. Target Corp.*, 480 Mass. 14, 15, 99 N.E.3d 788, 790 (2018); *see also Watkins v. Glenn Assocs., Inc.*, 2016 WL 3224784, at *2 (Mass. Super. June 10, 2016) ("Taken as a whole, the Guidance and the state regulation evidence a clear intent by the Attorney General to limit the pressure that debt collectors may exert upon a person who simply owes a debt, to prevent a creditor from intruding upon a debtor's personal life, and to protect them from harassment, oppression, and abuse."). Thus, this class action serves important public policy of ensuring that consumers' rights be protected even where individual damages are minimal. So too, the requested fee here serves an important public policy of ensuring that consumer claims under the regulation and Chapter 93A can be pursued by experienced and competent counsel.

### H. A LODESTAR CROSS-CHECK SUPPORTS THE REQUESTED AWARD

The requested attorneys' fees and expenses are reasonable under the lodestar method. "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005). Nonetheless, courts often consider the lodestar when determining the reasonableness of a fee calculated as a percentage of the fund. *See id.* In addition, multipliers of lodestar amounts is "an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (collecting cases).

Class Counsel's lodestar in this action is $154,175 which is based on 298 attorney and professional staff hours. (Lemberg Decl., ¶ 13):

| **Professional** | **Rate** | **Hours** | **Lodestar** |
|---|---|---|---|
| Sergei Lemberg, Esq. | $650 | 94 | $61,100 |
| Stephen Taylor, Esq. | $600 | 78 | $46,800 |
| Josh Markovits, Esq. | $400 | 111 | $44,400 |
| Paralegal Time | $125 | 15 | $1,875 |
| | | 298 | $154,175 |

These rates are fully supported by the skill and experience of Plaintiff's counsel and well within the market rate for their services. (Lemberg Decl. ¶¶ 14-16; Taylor Decl. ¶¶ 2-7). The lodestar does not include additional work associated with final approval and Class Counsel's oversight of the settlement administration process. (Lemberg Decl. ¶ 12).

Based on the lodestar to date, the lodestar crosscheck results in a multiplier of 1.25. This multiplier is well within the range of what other Courts have approved. *See Roberts*, 2016 WL 8677312, at *13 (court approved a multiplier of 1.96); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (court approved lodestar multiplier of about 8.3); *In re AMICAS, Inc. S'holder Litig.*, 2010 WL 5557444, at *4 (Mass. Super. Dec. 6, 2010), *judgment entered sub nom. In re Amicas, Inc. S'holder Litig.* (Mass. Super. 2010) (court approved lodestar multiplier of 5).

Accordingly, the lodestar cross-check demonstrates that a fee and cost award of one-third of the common fund here is fair and reasonable and reasonable compensation to Class Counsel for their efforts on achieving an excellent result for the Settlement Class.

## IV. THE REASONABLENESS OF THE REQUESTED AWARD IS FURTHER DEMONSTRATED BY THE FACT THAT IT IS INCLUSIVE OF EXPENSES

The reasonableness of the fee award to Class Counsel is further demonstrated by the fact that it is inclusive of both attorneys' fees and expenses. Here, Class Counsel's expenses total $7,128.87.

(Lemberg Decl. ¶ 18). The fact that these expenses are included in the amount sought by Class Counsel demonstrates that the requested amount is reasonable and appropriate. *See Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (approving fee award of one third of settlement fund and noting "Class Counsel's good faith in agreeing to absorb all costs as part of the fee award without seeking separate reimbursement for them.").

## V. THE COURT SHOULD APPROVE INCENTIVE AWARDS TO THE PLAINTIFFS FOR THEIR EFFORTS ON BEHALF OF THE CLASS

Class Counsel requests that the Court approve the payment of incentive awards to the two Plaintiffs in the amount of $6,000 each.

An incentive award for bringing and litigating this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litigation*, § 21.62 n.971 (4th ed. 2004); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005). Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005).

Both Plaintiffs have been engaged with their cases from the outset, they have been in regularly contact with their counsel and aided their investigation. (Lemberg Decl. ¶ 10). But for their efforts, and their desire and willingness to stick with this case and get relief for others, the Settlement Class here would have received nothing. An incentive award of $6,000 to each is reasonable and fair and within the range of awards approved in other class actions. *See, e.g.*, *Carlson*, 2020 WL 1332839, at *3 (approving an incentive award of $7,500 to named plaintiff); *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (approving award of $20,000 to each

named plaintiff); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving $10,000.00 incentive award and collecting cases).

**CONCLUSION**

For the reasons set forth above, Plaintiffs and Class Counsel respectfully request that the Court grant this motion and (1) award attorneys' fees and expenses to Class Counsel in the amount of $192,000.00 and (2) award $6,000 as an incentive award to each of the Plaintiffs for their role in representing the class.

Dated: October 11, 2021

Respectfully submitted,

By*:* *___/s/ Sergei Lemberg________*

Sergei Lemberg (BBO# 650671)
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2021, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system which sent notice of such filing to all counsel of record.

/s/ Sergei Lemberg
Sergei Lemberg